# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**JERMAINE ALEXANDER RAMSEY**                                                **PLAINTIFF**

v.                                                                                          **No. 4:18CV145-DAS**

**WARDEN TIMOTHY MORRIS**
**ASSOC. WARDEN VERLENA FLAGG**
**DEPUTY WARDEN BRENDA COX**
**CHIEF MEDICAL OFFICER WILLIE KNIGHTEN**               **DEFENDANTS**

## ORDER FINDING CASE TO BE FILED
## VEXATIOUSLY, DISMISSING CASE, IMPOSING SANCTION

This matter comes before the court on the response of the plaintiff to the court's order [65] for the plaintiff to show cause why the instant case should not be dismissed as vexatious – and a restriction imposed to deter the plaintiff from filing similar cases in the future. In the show-cause order, the court noted the many instances in which the plaintiff "submitted forms bearing only his handwriting and signature as 'proof' of his attempts to obtain relief from prison authorities." Doc. 65 at 2. The court also noted that, despite Mr. Ramsey's fourteen-year incarceration within the Mississippi Department of Corrections, he "submitted grievance after grievance with … obvious defects – knowing full well that they would be rejected." *Id*. at 3. The court further noted that Mr. Ramsey had "provided several notes allegedly containing threats against him and demanding that he dismiss a lawsuit against prison officials." *Id*. The court then stated several reasons to question the notes' authenticity – including the fact that the handwriting on one of the notes bore a striking resemblance to the plaintiff's own writing. *Id*. Indeed, the name "Ramsey" in that note is drafted in handwriting indistinguishable from the plaintiff's printed signature.

The court recounted the fact that Mr. Ramsey alleges that he has been attacked repeatedly, "sustaining lacerations and puncture injuries to his face and body on multiple occasions." *Id*. at 4.

He also alleged that he slipped and fell in the shower at the Mississippi State Penitentiary, sustaining bruising and injury to his legs, back, and shoulder. *Id*. He alleged that he had been sexually assaulted multiple times at the behest of defendant Timothy Morris – whom he also alleges offered a $10,000 reward to any inmate who could kill him. *Id*. at 3-4. Based upon the complete lack of documentary evidence to support such allegations in this and other cases, the court invited Mr. Ramsey to offer "some quantum of documentary proof (other than his sworn statement or forms bearing only his signature) for each of his claims." *Id.* at 7.

Mr. Ramsey's response to the court's order is unsatisfactory. He alleged in his complaint and amendments that he had repeatedly suffered lacerations and puncture wounds to his face from knife attacks, and serious injuries from beatings. He also alleged that he has been repeatedly sexually assaulted. He provided no documentation of any injuries from such attacks. Based upon the documents the plaintiff provided, the only injury objectively noted by medical personnel (at the Central Mississippi Correctional Facility) was "mild edema" on the back of his right shoulder. Doc. 68 at 29. Medical personnel later characterized this as a "knot." *Id*. at 28. He offered no documentation of cuts, puncture wounds, severe injuries from beatings, or sexual assault.[1]

Further, Mr. Ramsey did not explain why he initially filed with the court the sick call requests and other documents bearing only his writing – while claiming that they had been rejected by prison officials. As the court noted, it appears that Mr. Ramsey simply filled in the forms and sent them directly to the court. In his response to the court's show-cause order, Mr. Ramsey provided a few pre-filing sick call requests that appear to have been received and handled by medical staff, *but none*

---

[1] Most of the documentation Mr. Ramsey provided in response to the court's show-cause order is dated after he filed the instant case. Some documents after the instant complaint was filed show that security concerns (such as violent and aggressive behavior ) drove the decision not to transport him to medical. Doc. 68 at 9.

*of these matched the documents he initially provided to the court*. He has offered no explanation for these differences – or why he provided the incomplete and questionable documents with his original complaint and its various amendments.

Mr. Ramsey also failed to explain why he repeatedly filed grievances in a form sure to be rejected by the Administrative Remedy Program. He did not explain why prisoners seeking a $10,000 reward for killing him would choose to warn him first, thus reducing their opportunity to collect the reward. Mr. Ramsey has not explained why defendant Timothy Morris would offer $10,000 for inmates to kill him – when Mr. Morris has been a defendant in well over a hundred suits in the past. Mr. Ramsey has offered no reason why Timothy Morris would have offered such a large reward regarding Ramsey in particular – or why he would risk criminal prosecution over a single *pro se* prisoner case among many.

In addition, the court notes that the plaintiff stated that he received no medical treatment for the injuries he allegedly suffered when he slipped and fell in the shower:

> I was denied medical treatment, and even after numerous requests through sick call forms I have never received any type of medical treatment whatsoever for my leg, back and right shoulder injuries.

Doc. 1 at 5. Mr. Ramsey signed his complaint on June 27, 2018. He was, however, examined and treated by medical personnel on June 12 and June 13, 2018, for those injuries – two weeks before filing the complaint. It was during this visit that medical personnel at the Central Mississippi Correctional Facility examined him and found only "mild edema" on the back of his shoulder. Doc. 68 at 30. Indeed, Nurse Elizabeth Haraway noted that Mr. Ramsey "[d]enies seeking medical treatment for this concern." *Id*. Thus, the documents Mr. Ramsey provides tend to undermine his allegation that he repeatedly sought medical treatment immediately after his slip-and-fall accident. In any event, he received medical treatment that day in the form of a physical examination and a five-day prescription for ibuprofen.

Even taking Mr. Ramsey's documents at face value, it appears that medical staff merely aggregated Ramsey's multiple medical requests and addressed those concerns in two visits – June 12, 2018, and June 13, 2018. Doc. 68 at 5, 6, 7, 8, 29, 30, 31. It also appears that he was transported to various locations during that time, as he alleges that on May 21, 2018, he slipped and fell at the Mississippi State Penitentiary in Parchman (Doc. 68 at 30), was moved briefly to the Marshall County Correctional Facility in Holly Springs (Doc. 68 at 6), then moved again to the Central Mississippi Correctional Facility, where he received treatment on June 12, 2018 (Doc. 68 at 30). Finally, his injuries were minor – limited to mild swelling on the back of his shoulder.

## Sanctions

The court may award sanctions under its inherent power for abuse of the judicial process only after finding that the litigant has acted in bad faith. *Roadway Express v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980). Sanctions may only be imposed under the court's inherent power after the person being sanctioned has had adequate notice and a meaningful opportunity to be heard. *Persyn v. United States*, 135 F.3d 773 (Fed. Cir. 1997). The court has the power to police its docket in situations like the present one, where a litigant files numerous outrageous and meritless pleadings or otherwise disrupts the orderly administration of the docket. *Landis v. North American Co.*, 299 U.S. 248 (1936), *Marinechance Shipping v. Sebastian*, 143 F.3d 216 (5th Cir 1998), *U.S. Abatement v. Mobil*, 39 F3d 556 (5th Cir 1993). The Supreme Court acknowledges the need for the inherent power sanction when sanctions are clearly appropriate. *Id.* A district judge may use the inherent power of the court to fashion nearly any sanction he deems appropriate to the circumstances; however, the court should choose the least severe sanction adequate to deter sanctionable conduct in the future. *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866 (5th Cir. 1988). The court's inherent power to impose sanctions must be used with restraint and caution

because of its potency and the limited control of its exercise; the power may be exercised only if essential to preserve the authority of the court, and the sanction chosen must employ the least possible power adequate to the end proposed. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)*; Anderson v. Dunn*, 19 U.S. (6 Wheat) 204, 231, 5 L.Ed. 242 (1821), *quoted in Spallone v. United States*, 493 U.S. 265, 280, 110 S.Ct. 625, 635, 107 L.Ed.2d 644 (1990); *see also Roadway Express, supra.* As long as a party receives an appropriate opportunity to be heard, he may be sanctioned for abuse of the judicial process occurring beyond the courtroom. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). The fact that a court initiates sanctions against a party *sua sponte* does not indicate that the court is biased against that party. *Lemaster v. United States*, 891 F.2d 115 (6th Cir. 1989). The inherent power of the court emanates from the "control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (quoting *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630-631, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)).

Mr. Ramsey's allegations in his complaint are wildly at odds with the documentation he has provided to the court. He has not explained the difference between the horrible attacks and injuries he has described in his complaint – and the actual injury documented in his medical record – mild swelling on the back of one shoulder. He stated that he received no medical treatment for his injuries, but the few documents he provided showed that he did, indeed, receive treatment for the injury allegedly sustained in a slip-and-fall accident. These are not minor matters; they are central to the plaintiff's claims, and he has obviously concocted all or most of the allegations in his complaint. Even if the documents provided to the court tend to support a single allegation (the slip and fall in the

shower), the many unsupported and false allegations Mr. Ramsey has made show that he filed the instant suit vexatiously .

As suggested in the Show Cause Order, the instant case is **DISMISSED** with prejudice as vexatious.  **In addition, in future cases, Mr. Ramsey must provide a quantum of documentary proof, other than his sworn statement or documents bearing only his own signature, to support each claim he brings.**   This will enable the plaintiff to seek relief in federal court for actual violations of his rights by prison officials – but would prevent him from simply concocting claims and sending in forms of his creation to substantiate those claims.   The proof need not rise to the level of supporting a prima facie case for each claim, but must be sufficient to give rise to a reasonable inference that the events described in the plaintiff's allegations actually occurred.   Finally, in light of the termination of this case, *the motions currently pending in this case are **DISMISSED** as moot*.

**The dismissal of this case with prejudice as vexatious counts as a "STRIKE" under 28 U.S.C. § 1915(g).**

**SO ORDERED**, this, the 23rd day of May, 2019.

/s/ David A. Sanders
DAVID A. SANDERS
UNITED STATES MAGISTRATE JUDGE